UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:16-CR-1045 |
| | § | |
| JUAN ANTONIO COMPIAN | § | |

## ORDER ON MOTION TO SUPPRESS

Before the Court is Defendant Juan Antonio Compian's (Compian) Motion to Suppress (D.E. 18) and the Government's Response (D.E. 20). Compian asserts that the events leading up to his arrest and the evidence obtained thereby violated his Fourth Amendment protection against unreasonable searches and seizures. After an evidentiary hearing on March 31, 2017, the Court DENIED the motion for the reasons set out below.

### FACTS

On December 4, 2016, Border Patrol Agent Joshua Blanton (Agent Blanton) was patrolling Highway 281 in his marked Border Patrol unit about eight miles south of the Falfurrias immigration checkpoint where Highway 281 intersects Farm to Market Road 755 (FM 755). Human smugglers commonly use FM 755 as a drop-off, where they unload undocumented immigrants so that the immigrants can circumvent the checkpoint on foot. This area is more than 50 miles from the border, but because of its proximity to the checkpoint, Border Patrol agents have daily encounters with human and drug smugglers.

Agent Blanton was traveling southbound, moving away from the checkpoint. Meanwhile, Compian was traveling northbound in a red suburban. Compian's vehicle

caught Agent Blanton's attention because it braked rapidly, causing the front of the vehicle to nosedive. Compian had his window down, and when they made eye contact, he covered his face with his hand and turned away. Agent Blanton became suspicious so he took a turnaround and followed Compian. He noticed that Compian's vehicle veered from side to side within the lane which, based on training, indicated that Compian was looking at the Agent instead of the road. Compian then abruptly pulled over to the shoulder. Agent Blanton also pulled over, stopping about thirty yards behind him. Compian got out of his vehicle, approached the front driver's side tire, and kicked and inspected it for 30 to 40 seconds. He then got back in his vehicle and continued traveling north. Agent Blanton, who had worked as a manager at Discount Tire for about ten years before joining Border Patrol, did not notice any problems with the tire.

Agent Blanton followed Compian and pulled up next to him to check for passengers, but did not see any. He noticed that Compian looked straight ahead as if avoiding eye contact. Agent Blanton did not believe he had sufficient grounds to stop Compian so he passed him, but kept watch in the rearview mirror. Compian abruptly switched lanes and took a turnaround which almost caused a collision with another vehicle. Agent Blanton decided to initiate a stop so he turned around and activated his emergency lights. Compian pulled to the side of the highway and the Agent expected a bailout—passengers attempting to flee on foot—but no one left the vehicle. He asked Compian if he was okay and why he had made the abrupt maneuver. Compian explained that he was having trouble with his wheel—it was shaking violently and about to fall off. However, there did not appear to be anything wrong with it.

For safety reasons, Agent Blanton asked Compian about his criminal history. Compian was evasive and the Agent noticed a change in his body language and voice as well as what looked like prison tattoos. He asked Compian to step out of the vehicle so he could frisk for weapons. Compian continued being evasive, but eventually admitted that he had been to prison for assault.

Although Agent Blanton believed he had probable cause to search the vehicle, he asked Compian for consent to search to keep the encounter calm and cordial. Compian gave the Agent permission to search the vehicle. For his safety, Agent Blanton placed Compian in handcuffs and placed him the back of the unit. He advised Compian that he was not under arrest and that the detention would be temporary while he searched the vehicle. Two undocumented immigrants were then discovered in the vehicle.

## ANALYSIS

Compian asserts three arguments: (1) the stop was an illegal detention not supported by a reasonable suspicion; (2) the stop was unreasonably prolonged; and (3) the search was not justified by probable cause or voluntary consent. The Court considers each argument in turn, and concludes that they are without merit.

### A. The Legality of the Stop

"The Fourth Amendment permits a Border Patrol agent conducting a roving patrol to stop a vehicle for purposes of a temporary investigation 'if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.'" *United States v. Galvan-Torres*, 350 F.3d 456, 457 (5th Cir. 2011) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Courts must consider "the totality of the

circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273. Factors that may be considered include:

> (1) proximity to the border; (2) characteristics of the area; (3) usual traffic patterns; (4) agent's previous experience in detecting illegal activity; (5) behavior of the driver; (6) particular aspects or characteristics of the vehicle; (7) information about recent illegal trafficking in aliens or narcotics in the area; and (8) the number, appearance, and behavior of the passengers.

*United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975)). "No single fact is determinative of the outcome of a reasonable suspicion analysis." *Galvan-Torres*, 350 F.3d at 458 (citing *United States v. Guerrero-Barajas*, 240 F.3d 428, 433 (5th Cir. 2001)).

Compian relies on a line of cases that state that when a vehicle is stopped more than 50 miles from the border, the remaining *Brignoni-Ponce* factors must be considered cautiously. *See Jacquinot*, 258 F.3d at 428; *United States v. Inocencio*, 40 F.3d 716, 722 & nn. 6-7 (5th Cir. 1994); *United States v. Melendez-Gonzalez*, 727 F.2d 407, 411 (5th Cir. 1984); *United States v. Pacheco*, 617 F.2d 84, 86 (5th Cir. 1980). The Fifth Circuit has stated that whether the agent had reason to believe that the vehicle recently crossed the border is a vital element in the reasonable suspicion test. *Jacquinot*, 258 F.3d at 428; *see also United States v. Olivares-Pacheco*, 633 F.3d 399, 409 (5th Cir. 2011) ("Proximity to the border is a 'paramount factor,' and, again, we must look at the other evidence charily if such proximity is not present."). "[A] car traveling more than 50 miles from the border is usually viewed as being too far from the border to support an

inference that it originated its journey there." *Jacquinot*, 258 F.3d at 428. Thus, "the 'fifty mile' rule creates a presumption that causes all factors to be viewed charily when a vehicle is first observed fifty or more miles from the border." *United States v. Rubio-Hernandez*, 39 F. Supp. 2d 808, 813 (W.D. Tex. 1999). However, the fifty mile rule is not dispositive. *See United States v. Cervantes*, 797 F.3d 326, 330 (5th Cir. 2015) (affirming the denial of a motion to suppress and noting that even though the stop occurred more than 200 miles from the border, the area was "well known for its prevalence of drug and alien smuggling").

Because the stop in this case occurred more than 50 miles from the border, the Court weighs the evidence cautiously in accordance with Fifth Circuit precedent. The Court nonetheless finds that, based on the totality of the circumstances, Agent Blanton's decision to stop Compian was justified by a reasonable suspicion. Multiple factors weigh in favor of this determination. First, the proximity to the immigration checkpoint made smuggling activity more likely. Second, the area is a known drop-off for undocumented immigrants and Border Patrol agents have daily encounters with smugglers. Third, Compian behaved suspiciously—rapidly braking on seeing the Border Patrol unit; covering his face with his hand; veering from side to side within his lane and abruptly moving to the shoulder; pretending to have trouble with his tire or wheel; and finally, abruptly taking the turnaround, which almost caused an accident. Based on these factors, Agent Blanton reasonably suspected that criminal activity was afoot.

## B. Duration of the Stop

"[A] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc). "The reasonableness of the length of detention is judged by 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.'" *United States v. Wallstrum*, 515 F. Appx. 343, 350 (5th Cir. 2013) (quoting *Brigham*, 382 F.3d at 511). Officers may inquire about matters unrelated to the purpose of the stop "'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'" *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (citing *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). Furthermore, an officer may take reasonable precautions to ensure his safety. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111-12 (1977) (per curiam) (citing *Terry v. Ohio*, 392 U.S. 1, 17 (1968)).

Agent Blanton did not prolong the detention. He stopped Compian because he reasonably suspected that Compian was involved in smuggling activities. The detention was brief, during which the Agent asked Compian questions about his actions, the tire, and his criminal history. He had Compian step out of the vehicle to conduct a frisk for weapons after noting that Compian was evasive, had what looked like prison tattoos, and had a change in his body language and voice. The encounter lasted a few minutes, at the end of which Agent Blanton asked Compian for consent to search the vehicle. The Court finds that the length of the detention was reasonable.

## C. Consent to Search

A warrantless search by the police violates the Fourth Amendment and is invalid unless it falls within one of the recognized exceptions to the warrant requirement. *Flippos v. West Virginia*, 528 U.S. 11, 13 (1999) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). One exception to the warrant requirement is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citing *Davis v. United States*, 328 U.S. 624, 630 (1946)). "In order to satisfy the consent exception, the government must demonstrate that there was (1) effective consent, (2) given voluntarily, (3) by a party with actual or apparent authority." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Compian asserts that the consent was not given voluntarily.

Voluntariness is a factual determination that courts must decide from the totality of the circumstances. *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). There are six factors that courts consider when determining whether consent was voluntary:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Id.* (quoting *United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1998)). "[A]lthough all of the above factors are highly relevant, no one of the six factors is dispositive . . . ." *Id.*

Here, although Compian's custodial status was involuntary and he likely knew there was incriminating evidence, the factors weigh in favor of finding that the consent was voluntary. Compian cooperated with Agent Blanton and the encounter was cordial and non-confrontational. Agent Blanton did not use coercive procedures in obtaining Compian's consent. After consent was given, he handcuffed Compian, explaining that the handcuffs were a safety precaution and he was not being arrested. There is no evidence as to the remaining factors—Compian's education, intelligence, and awareness of his right to refuse to consent. The Court finds that the Government has met its burden to show that Compian gave voluntary consent.

## CONCLUSION

For the reasons set forth above, Compian's motion to suppress (D.E. 18) is DENIED.

ORDERED this 2nd day of May, 2017.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE